**Electronically Filed
Supreme Court
SCAP-22-0000045
15-MAR-2023
07:52 AM
Dkt. 23 OP**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I, Plaintiff-Appellant,

vs.

RAVEN S. MORTENSEN-YOUNG, Defendant-Appellee.
(CAAP-22-0000045; CASE NO. 1DTA-21-01297)

----------------------------------------------------------------

STATE OF HAWAI'I, Plaintiff-Appellant,

vs.

LANCE M. OSHIMA, Defendant-Appellee.
(CAAP-22-0000046; CASE NO. 1DTA-21-01719)

----------------------------------------------------------------

STATE OF HAWAI'I, Plaintiff-Appellant,

vs.

MARLIN TORNQUIST TUCKER, Defendant-Appellee.
(CAAP-22-0000047; CASE NO. 1DTA-21-01463)

----------------------------------------------------------------

STATE OF HAWAI'I, Plaintiff-Appellant,

vs.

RYAN D. WOOD, Defendant-Appellee.
(CAAP-22-0000048; CASE NO. 1DTA-21-01472)

SCAP-22-0000045

APPEALS FROM THE DISTRICT COURT OF THE FIRST CIRCUIT

MARCH 15, 2023

RECKTENWALD, C.J., NAKAYAMA, McKENNA, AND EDDINS, JJ.,
AND WILSON, J., DISSENTING

OPINION OF THE COURT BY NAKAYAMA, J.

## I. INTRODUCTION

This case concerns whether Hawaiʻi Revised Statutes

(HRS) § 805-1 and this court's holding in State v. Thompson, 150

Hawaiʻi 262, 500 P.3d 447 (2021), apply to a complaint used to

charge a defendant with Operating a Vehicle Under the Influence

of an Intoxicant (OVUII) after the defendant was properly

arrested without a warrant.

In July, August, and October of 2021, Plaintiff-

Appellant the State of Hawaiʻi (the State) charged Defendant-

Appellee Raven S. Mortensen-Young (Mortensen-Young), Defendant-

Appellee Marlin Tornquist Tucker (Tucker), Defendant-Appellee

Ryan D. Wood (Wood), and Defendant-Appellee Lance M. Oshima

(Oshima) by complaint with OVUII in the District Court of the

First Circuit (district court).  On December 28, 2021,

Mortensen-Young, Tucker, Wood, and Oshima (collectively,

Appellees) each filed a "Motion to Dismiss for Defective

Complaint and Improper Arraignment" (Motions to Dismiss),

arguing that "the complaint . . . is not supported by:" (1) "The

complainant's signature; or" (2) "A declaration submitted in

2

lieu of affidavit," as required by this court's decision in Thompson.  The State filed memoranda and supplemental memoranda in opposition to the Motions to Dismiss.  After holding a hearing, the district court orally granted Appellees' Motions to Dismiss.

On January 12, 2022, the district court issued a "Notice of Entry of Judgment and/or Order and Plea/Judgment" (Notice of Entry of Judgment) granting Appellees' Motions to Dismiss.  The district court issued its "Findings of Fact and Conclusions of Law and Order Granting Defendant's Motion to Dismiss for Defective Complaint and Improper Arraignment" (Order Granting Motions to Dismiss) on January 19, 2022.  The district court granted Appellees' Motions to Dismiss without prejudice.

The State filed a notice of appeal in the Intermediate Court of Appeals (ICA).  On April 19, 2022, the State timely filed an application for transfer, which this court granted on May 6, 2022.  In its opening brief, the State contends, inter alia, that "[t]he district court erred in concluding that the charging instruments in these cases were required to comply with HRS § 805-1 and thus erred in dismissing these charging instruments on the grounds that they did not comply with that statute."  Appellees filed an answering brief disagreeing with the State's arguments, and the State filed a reply brief.

3

The State's argument that the complaints in Appellees' cases were not required to comply with HRS § 805-1 has merit. First, this court's holding in Thompson and the plain language of HRS § 805-1 establish that HRS § 805-1 applies only to complaints for a penal summons or an arrest warrant. Second, case law interpreting previous versions of HRS § 805-1 confirm that the statute applies only to complaints for a penal summons or an arrest warrant. In addition, the State properly initiated the criminal proceedings against Appellees pursuant to Hawaiʻi Rules of Penal Procedure (HRPP) Rule 7.

Accordingly, we hold that the complaints in Appellees' cases did not have to comply with HRS § 805-1, and the State properly initiated the criminal proceedings against Appellees. Thus, the district court erroneously dismissed without prejudice the complaints in Appellees' cases.

## II. BACKGROUND

### A. Factual Background

Appellees were all arrested for OVUII and Appellees all posted bail. Appellees were examined and released after posting bail before 48 hours passed.[1]

---

[1] It appears that this information only appears in the parties' briefings, but Appellees do not contest that Appellees were arrested, examined, and released after posting bail before 48 hours had passed.

**B.   District Court Proceedings[2]**

On July 23, 2021, the State charged Mortensen-Young by complaint with the offense of OVUII in violation of HRS § 291E-61(a)(1).  On August 17, 2021, the State charged Tucker by complaint with the offense of OVUII in violation of HRS § 291E-61(a)(1) and/or (a)(3).  On August 19, 2021, the State charged Wood by complaint with the offense of OVUII in violation of HRS § 291E-61(a)(1) and/or (a)(3).  On October 11, 2021, the State charged Oshima by complaint with the offense of OVUII in violation of HRS § 291E-61(a)(1) and/or (a)(4).

The complaints, which largely contained the same language, provided:

<u>COMPLAINT</u>
The undersigned Deputy Prosecuting Attorney of the City and County of Honolulu, State of Hawai'i charges:
On or about [date of offense], in the City and County of Honolulu, State of Hawai'i, [defendant's name], did intentionally, knowingly, or recklessly operate or assume actual physical control of a vehicle upon a public way, street, road, or highway while under the influence of alcohol in an amount sufficient to impair his normal mental faculties or ability to care for himself and guard against casualty, thereby committing the offense of Operating a Vehicle Under the Influence of an Intoxicant, in violation of Section 291E-61(a)(1) [and/or (a)(3) or (a)(4)] of the Hawai'i Revised Statutes.  [Defendant's name], is subject to sentencing in accordance with [Section 291E-61(b)(1) or (b)(2)] of the Hawai'i Revised Statutes as a [first or second] offender.  [Definition of "prior conviction" in Oshima's case].
I [deputy prosecuting attorney], declare under penalty of law that the foregoing is true and correct to the best of my knowledge and belief.
Dated at Honolulu, Hawai'i: [Date of complaint].

---

[2]   The Honorable William M. Domingo presided.

5

Appellees filed Motions to Dismiss on December 28, 2021.  Appellees all argued that "the complaint . . . is not supported by:" (1) "The complainant's signature; or" (2) "A declaration submitted in lieu of affidavit," as required by this court's decision in Thompson.

The State filed memoranda in opposition to Appellees' Motions to Dismiss on January 3, 2022.  The State maintained that the complaints in Appellees' cases were "made by declaration" as required by HRPP Rule 47(d) and HRS § 805-1.[3]

---

[3]     HRS § 805-1 (2014) provided:

> Complaint; form of warrant.  When a complaint is made to any prosecuting officer of the commission of any offense, the prosecuting officer shall examine the complainant, shall reduce the substance of the complaint to writing, and shall cause the complaint to be subscribed by the complainant under oath, which the prosecuting officer is hereby authorized to administer, or the complaint shall be made by declaration in accordance with the rules of court.  If the original complaint results from the issuance of a traffic summons or a citation in lieu of an arrest pursuant to section 803-6, by a police officer, the oath may be administered by any police officer whose name has been submitted to the prosecuting officer and who has been designated by the chief of police to administer the oath, or the complaint may be submitted by declaration in accordance with the rules of court.  Upon presentation of the written complaint to the judge in whose circuit the offense allegedly has been committed, the judge shall issue a warrant, reciting the complaint and requiring the sheriff, or other officer to whom it is directed, except as provided in section 805-3, to arrest the accused and to bring the accused before the judge to be dealt with according to law; and in the same warrant the judge may require the officer to summon such witnesses as are named in the warrant to appear and give evidence at trial.  The warrant may be in the form established by the usage and practice of the issuing court.

On January 10 and 11, 2022, the State filed supplemental memoranda in opposition to Appellees' Motions to Dismiss.[4]  According to the State,

> The premise for the motion to dismiss the complaint pursuant to [Thompson] relies on the proposition that [Thompson] applies to all complaints.  It does not.  It only applies to penal summons cases.  The language used by the Supreme Court makes it clear that the Court did not intend to bring about a "sea change" as to how criminal complaints are filed when it held in Thompson that the State may not request a penal summons using a complaint that does not comply with [HRS] § 805-1.

The State maintained that

> [HRS] § 805-1 deals with arrest warrants.  The Thompson court extended this section to penal summons cases which is reasonable given the reference in [HRS §] 805-1 to [HRS §] 805-3 which allows the district judge, in the district judge's discretion, to issue a penal summons.  It would be absurd to interpret [HRS §] 805-1 which is entitled, "Complaint; form of warrant" to a case, such as the instant case, in which the defendant had been arrested; bail was set; defendant posted bail and was released.  In these cases, there is no need for the State to request that the Court issue an arrest warrant.
> These warrantless OVUII arrests are authorized by [HRS] §§ 803-1; 803-5; 803-6(a) and HRPP 5(a)(2).  These cases do not come under [HRS] § 805-1 which is captioned, "Complaint; form of [warrant]."  In OVUII cases, the arrest has already occurred and the [S]tate is not requesting an arrest warrant (which would be absurd).

The district court held a hearing on Appellees' Motions to Dismiss on January 12, 2022.  Counsel for the State and counsel for Appellees made arguments and the district court orally granted Appellees' Motions to Dismiss:

> THE COURT:  All right.  [The State], as far as the Thompson case though, wasn't it unequivocal that they stated that the -- the complaint was defective because it was not compliant with [HRS §] 805-1, is that correct?  So how can you argue -- at this point if a complaint is

---

[4]     The State acknowledged that it did not file a supplemental memorandum in opposition in Tucker's case but orally submitted the supplemental argument during the January 12, 2022 hearing without objection from Tucker's counsel.

> defective, then I don't think anything can, if you want to use fruit of the poisonous tree kind of analogy, you can't go further from that if you have a defective complaint.
>
> [THE STATE]:  Our response to that, your honor, would be the complaint in <u>Thompson</u>, they asked the State -- they asked the court to issue a penal summons, asked for -- court to -- for some sort of process and that process is pursuant to [HRS §] 805-1, and we're saying the process that was used in these cases do not come under [HRS §] 805-1.  They come under the other statutes that we set forth in our supplemental memo.
>
> . . . .
>
> THE COURT:  Okay.  All right.  Ready to rule on these matters.
> Court finds that all of these cases have the same issue regarding the request to dismiss.  Based on the <u>Thompson</u> case the court finds that all of these cases, the complaints are defective as they were not made pursuant to [HRS §] 805-1.  There is no specific affidavit by the complainant in this matter or also a declaration by officer.  Court also finds that the police officer is not someone who can make that complaint effective at this point, so they are defective complaints and those cases will be dismissed.

Also on January 12, 2022, the district court filed its Notice of Entry of Judgment.

On January 19, 2022, the district court issued its Order Granting Motions to Dismiss.  The district court made the following relevant finding of fact:

> 4. Review of the Hawaii State Judiciary Information Management System (JIMS) reveals that no document containing the complainant's signature, or declaration in lieu of affidavit, or any other type of Judicial Determination of Probable Cause was filed in this matter.

The district court made the following conclusions of law:

> 1. On December 10, 2021, in <u>State v. Thompson</u> (SCWC-17-0000361), the Hawaii Supreme Court held that the failure of the prosecution to submit and file a complaint or declaration in lieu of affidavit containing the complainant's signature was fatal and required dismissal of the action.

8

2. In Thompson, the supreme court found that the prosecution violated HRS § 805-1 when it failed to comply with its statutory obligation to perfect its complaint by filing a complaint that was neither signed by a complainant nor supported by declaration signed by the complainant.

3. The Court further stated, "The requirements of HRS § 805-1 therefore apply to all criminal complaints, regardless of whether the State uses the complaint to seek a penal summons or an arrest warrant." "Thus in order to comply with HRS § 805-1, the underlying complaint should have been subscribed under oath by the complainant or made by declaration in lieu of an affidavit in conformity with HRPP Rule 47(d)."

4. The complaint filed in the instant case does not comport with the mandates of the holding in Thompson and HRS § 805-1.

Thus, the district court granted Appellees' Motions to Dismiss without prejudice.

## C. The Appeal and Application for Transfer

On February 10, 2022, the State timely appealed the district court's decision to the ICA.[5] On April 19, 2022, the State timely filed an application for transfer, which this court granted on May 6, 2022.

### 1. Opening Brief

The State filed an opening brief on June 16, 2022, challenging the district court's FOF 4 and COLs 1, 2, 3, and 4. As relevant here,[6] the State contends that the district court

---

[5] Appellees' appeals were consolidated on April 1, 2022.

[6] The State also argues "[a]ssuming arguendo that the charging instruments in these cases were required to comply with HRS § 805-1, the district court erred in concluding that HRS § 805-1, as interpreted by Thompson, requires a 'declaration in lieu of affidavit containing the complainant's signature.'" Because HRS § 805-1 does not apply to the complaints in Appellees' cases, this opinion does not address the State's argument that the complaints in Appellees' cases satisfied the requirements of HRS § 805-1.

mistakenly concluded that the charging instruments against Appellees "were required to comply with HRS § 805-1 and thus erred in dismissing these charging instruments on the grounds that they did not comply with that statute."  Citing to Thompson, 150 Hawai'i at 267, 500 P.3d at 452, the State notes that HRS § 805-1's requirements "apply regardless of whether the State uses the complaint to seek a penal summons or an arrest warrant."  The State asserts that the charging instruments against Appellees did not seek a penal summons or an arrest warrant and thus the charging instruments here are distinguishable from those in Thompson.

The State maintains "[i]t appears that the import of HRS § 805-1 has been substantially unchanged since 1892 when it was enacted as Chapter LVII, An Act to Reorganize the Judiciary Department."  The State further maintains that "[t]he earliest codified iteration of HRS § 805-1 appears to be Chapter 53 Part I § 606 of The Penal Law of the Hawaiian Islands, 1897."  Citing to Territory v. Sing Kee, 14 Haw. 586, 587-88 (1903), the State contends there is a difference "between a 'charge' which initiates a criminal trial and a 'complaint' in order 'to enable the magistrate to determine whether or not there is probable cause to believe that an offense has been committed by the accused so as to justify his apprehension.'"  The State asserts that Sing Kee makes clear a "complaint" under HRS § 805-1 is

different from a "complaint" under HRPP Rule 7(d), which "regulates the 'Nature and Contents' of a 'Charge.'"[7]  The State maintains that "[a] more accurate title for HRS § 805-1, in modern parlance would be 'application for a misdemeanor arrest warrant.'"  The State contends that a misdemeanor charging instrument, which does not ask for a penal summons or an arrest warrant, does not need to comply with HRS § 805-1 pursuant to Thompson.

The State maintains that the charging instruments in these cases need not comply with HRS § 805-1 because Appellees were all properly arrested without a warrant pursuant to

---

[7]     HRPP Rule 7 (2012) provides in relevant part:

> (a) Use of Indictment, Information, or Complaint. The charge against a defendant is an indictment, a superseding indictment, an information, or a complaint filed in court. . . .
>
>        . . . .
>
> (d) Nature and Contents.  The charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged. . . . A complaint shall be signed by the prosecutor. . . .

11

HRS §§ 803-5[8] and 803-6(a).[9]  According to the State, Appellees were examined and released "after posting bail before 48 hours had passed and before the requirement for a probable cause determination was triggered."  The State therefore contends that "the process used in these cases is separate and distinct from the procedure required in HRS § 805-1."

The State argues that the general rule for charges in HRPP Rule 7(d), and not HRS § 805-1, applies in Appellees' cases.  The State thus argues that the district court erroneously dismissed the charging instruments, which complied

---

[8]   HRS § 803-5 (2014) provides:

> By police officer without warrant.  (a) A police officer or other officer of justice, may, without warrant, arrest and detain for examination any person when the officer has probable cause to believe that such person has committed any offense, whether in the officer's presence or otherwise.
> (b) For purposes of this section, a police officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution in the belief that a crime has been or is being committed.

[9]   HRS § 803-6(a) (2014) provides:

> Arrest, how made.  (a) At or before the time of making an arrest, the person shall declare that the person is an officer of justice, if such is the case.  If the person has a warrant the person should show it; or if the person makes the arrest without warrant in any of the cases in which it is authorized by law, the person should give the party arrested clearly to understand for what cause the person undertakes to make the arrest, and shall require the party arrested to submit to be taken to the police station or judge.  This done, the arrest is complete.

with the requirements to initiate a prosecution in these cases under HRPP Rule 7(d).

### 2. Answering Brief

Appellees filed an answering brief on August 24, 2022. As relevant here, Appellees argue that, pursuant to Thompson, the district court correctly applied HRS § 805-1 to the complaints against Appellees. According to Appellees, "[t]he issue of whether the complaint complies with the requirements of HRS § 805-1 is distinct from whether a penal summons can be issued on a defective complaint."[10]

Appellees maintain that the specific issue before this court in Thompson "was whether the ICA had gravely erred in holding that compliance with HRPP Rule 7(d) satisfied the 'declaration in accordance with the rules of court' requirement of HRS § 805-1." Appellees argue that the State mistakenly contends that the holding in Thompson "only requires compliance with HRS § 805-1 in cases where the State seeks a penal summons or arrest warrant." According to Appellees, this court concluded that HRS § 805-1 requires that a complaint be subscribed by the complainant or supported by declaration in lieu of affidavit "to protect the accused's right to challenge the veracity of the complainant." Appellees note that this

---

[10] In support of their argument, Appellees discuss the proceedings before the ICA and the family court in Thompson.

13

court "went on to hold that a complaint which does not meet the requirements of HRS § 805-1 is a 'fatally defective' complaint." Appellees point out that "[b]ecause the complaint was fatally defective, the supreme court held that it could not support the issuance of a penal summons."

Appellees maintain that this court's holding in Thompson was not limited "to only those instances where the State seeks a penal summons or arrest warrant." Citing to Thompson, 150 Hawai'i at 269, 500 P.3d at 454, Appellees argue that this court "specifically stated that, 'HRS § 805-1 unambiguously requires the State to ensure that complaints are either subscribed under oath by a complainant or accompanied by a declaration in lieu of an affidavit.'" Appellees maintain that this court did not state HRS § 805-1 only applies to a complaint seeking a penal summons or an arrest warrant. Appellees contend that "a complaint which is 'fatally defective' is not fatally defective only because the State uses such a complaint to seek an arrest warrant or penal summons." In addition, Appellees argue that since the underlying purpose of HRS § 805-1 is to protect the accused's right to challenge the veracity of the accuser, "it would be nonsensical to allow the State to choose the situations when this significant right was protected and when it was not." Appellees assert that would lead to an absurd result and must be rejected.

14

### 3. Reply Brief

The State filed a reply brief on August 25, 2022. The State argues that the enactment of HRS § 805-6 in 1949 further demonstrates "that HRS § 805-1 does not regulate all district court charging instruments." According to the State, the language of HRS § 805-6 is a recognition by the Hawai'i legislature of the district court's practices as noted in <u>Sing Kee</u> and the holding of "<u>Sing Kee</u> that the 'complaint' referred to in HRS § 805-1 is not a charging instrument." The State maintains that "nothing in HRS § 805-6 or any other statute, court rule or case holding . . . require[s] a charging instrument that is not a 'written complaint upon which the warrant of arrest or summons has been issued' to be governed in any way by the requirements of HRS § 805-1."[11]

### III. STANDARDS OF REVIEW

### A. Statutory Interpretation

"The interpretation of a statute is a question of law which this court reviews <u>de novo</u>." <u>Thompson</u>, 150 Hawai'i at 266, 500 P.3d at 451 (citing <u>State v. Ruggiero</u>, 114 Hawai'i 227, 231, 160 P.3d 703, 707 (2007)).

---

[11] The State also reiterates that HRPP Rule 7(d) is applicable to the charging instruments in Appellees' cases and notes that Appellees did not argue the charging instruments failed to comply with HRPP Rule 7(d).

**B.    Interpretation of Court Rules**

"When interpreting rules promulgated by the court, principles of statutory construction apply."  Id. at 266, 500 P.3d at 451 (quoting State v. Baron, 80 Hawai'i 107, 113, 905 P.2d 613, 619 (1995)).

**C.    Findings of Fact and Conclusions of Law**

> [A] trial court's findings of fact are subject to the clearly erroneous standard of review.  A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with a definite and firm conviction that a mistake has been committed.
>
> A conclusion of law is not binding upon an appellate court and is freely reviewable for its correctness.  This court ordinarily reviews conclusions of law under the right/wrong standard.  Thus, a conclusion of law that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned.  However, a conclusion of law that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

State v. Rapozo, 123 Hawai'i 329, 336, 235 P.3d 325, 332 (2010) (quoting State v. Gabalis, 83 Hawai'i 40, 46, 924 P.2d 534, 540 (1996) (brackets in original)).

**D.    Motion to Dismiss**

"A [trial] court's ruling on a motion to dismiss [a charge] is reviewed for an abuse of discretion."  Thompson, 150 Hawai'i at 266, 500 P.3d at 451 (quoting State v. Akau, 118 Hawai'i 44, 51, 185 P.3d 229, 236 (2008)) (brackets in original).

> The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.  The burden of establishing abuse of discretion is on appellant, and a strong showing is required to establish it.

16

Id. at 266, 500 P.3d at 451 (quoting State v. Wong, 97 Hawai'i 512, 517, 40 P.3d 914, 919 (2002)).

## IV.  DISCUSSION

### A.   HRS § 805-1 does not apply to the complaints in Appellees' cases.

The State first argues that the district court erroneously dismissed the charging instruments against Appellees based on its incorrect conclusion that those charging instruments were required to comply with HRS § 805-1.  According to the State, the charging instruments in Appellees' cases are distinguishable from Thompson because the State did not seek a penal summons or an arrest warrant in Appellees' cases.

The State's argument has merit for the following reasons.  First, Appellees' cases are distinguishable from Thompson, where the State used a complaint to obtain a penal summons.  Second, the plain language of HRS § 805-1 demonstrates that the statute applies only to complaints that seek a penal summons or an arrest warrant.  Third, case law interpreting previous versions of HRS § 805-1 demonstrate that the statute applies only to complaints that seek a penal summons or an arrest warrant.  Thus, as discussed below, there is a difference between a complaint used to obtain a penal summons or an arrest warrant and a complaint used to charge a defendant with a

17

criminal offense, and HRS § 805-1 applies only to a complaint used to obtained a penal summons or an arrest warrant.

1.    **The complaints in Appellees' cases are distinguishable from the complaint in Thompson.**

The State maintains that Appellees' cases are distinguishable from Thompson because the State did not seek a penal summons or an arrest warrant in Appellees' cases. In Thompson,[12] the State charged Corey Thompson by complaint with the offense of abuse of family or household member. 150 Hawai'i at 264, 500 P.3d at 449. The complaint was a single page signed only by a deputy prosecuting attorney and did not include a declaration or an affidavit. Id. "Based on the complaint, the clerk of the Family Court of the Third Circuit (family court) issued a penal summons compelling Thompson to appear in the Kona district court." Id. In response to the penal summons, Thompson appeared in family court and filed a motion to dismiss. Id. Thompson argued

> that the family court should dismiss the case for three reasons. First, the complaint was deficient because it was "not by declaration, and it does not contain the required sworn affidavit," as required by HRS § 805-1. Second, because the complaint was deficient, the family court lacked probable cause to issue the penal summons under HRS § 805-3. Third, in the absence of a supporting affidavit or declaration, the State could not arraign Thompson in compliance with Hawai'i Rules of Penal Procedure (HRPP) Rule 5(b)(1), which requires the State to give Thompson "[a] copy of the complaint, including any affidavits in support thereof[.]" (Emphasis omitted).

---

[12]    As the State pointed out in its application for transfer, this case presents "the first opportunity for an appellate court to interpret" Thompson.

Id. at 264-65, 500 P.3d at 449-50 (brackets in original). The family court concluded that because the complaint was "fatally defective due to a lack of supporting affidavit as required by HRS § 805-1, the penal summons was issued upon a faulty complaint, and the arraignment was improper for failure to provide Defendant with the supporting affidavit, this case must be dismissed without prejudice." Id. at 265, 500 P.3d at 450.

On appeal, the State contended, inter alia, "that the complaint was not defective because it complied with the requirements identified in HRPP Rule 7(d)." Id. The ICA agreed with Thompson, holding "that 'Section 805-1 required the Complaint to be signed by the complainant under oath or made by declaration in lieu of an affidavit consistent with HRPP Rule 47(d)'" and thus "determined that the complaint against Thompson did not comply with HRS § 805-1." Id. at 266, 500 P.3d at 451. However, "the ICA decided that a non-compliant complaint could still be used to initiate and maintain a prosecution by penal summons." Id.

On certiorari, this court agreed with Thompson's argument "that the ICA erred in holding that a complaint used to seek a penal summons need not satisfy the requirements of HRS § 805-1." Id. at 267, 500 P.3d at 452. Looking at the plain language of HRS § 805-1, this court noted that "Hawai‘i law provides for only a single type of criminal complaint regardless

19

of whether the complaint is used to initiate proceedings through an arrest warrant or a penal summons" and determined that HRS § 805-1's "statutory obligations apply regardless of whether the State uses the complaint to seek a penal summons or an arrest warrant." Id. (emphasis added). This court further determined that "once the State provides the district court with a complaint that complies with HRS § 805-1, only then may the district court choose to issue a penal summons if certain requirements are met." Id. (citing HRS §§ 805-1, 805-3). This court reiterated that "[t]he requirements of HRS § 805-1 therefore apply to all criminal complaints, regardless of whether the State uses the complaint to seek a penal summons or an arrest warrant." Id. (emphasis added).

This court noted that "HRS § 805-1 unambiguously obligates the State to either have a complaint subscribed under oath by a complainant or make the complaint by declaration in accordance with the rules of court," but "the phrase 'made by declaration in accordance with the rules of court' is ambiguous" because HRS § 805-1 "does not identify the 'rules of court' to which the declaration must conform." Id. (citing HRS § 805-1). This court determined that

> The legislative history of HRS § 805-1 establishes that the legislature intended for complaints "made by declaration in accordance with the rules of court" to be complaints made or accompanied by declarations in lieu of affidavits. When the legislature amended HRS § 805-1 to provide prosecutors with the option to make complaints by

> declaration, the Senate Committee on Judiciary and Labor explained that "allowing the use of <u>declarations in lieu of affidavits</u> for arrest citations and traffic crime complaints is consistent with current rules of court, and would not harm the offender's right to challenge the veracity of the officer." S. Stand. Comm. Rep. No. 1194, in 2007 Senate Journal, at 1557-58 (emphasis added). Similarly, the judiciary submitted testimony that the amendment "would also authorize an alternative form for verification of arrest citations and traffic crime complaints by allowing the issuing or complaining officer to verify the citation or complaint by declaration. <u>Declarations in lieu of affidavits</u> are authorized by court rules." Judiciary, Testimony to the Senate Committee on Judiciary and Labor on H.B. 1204, 24th Leg., Reg. Sess. (Mar. 9, 2007) (Hon. Russel Nagata, District Court, First Circuit) (emphasis added); <u>see also</u> Judiciary, Testimony to the Senate Committee on Judiciary and Labor on S.B. 1520, 24th Leg., Reg. Sess. (Feb. 26, 2007) (Hon. Corinne Watanabe, ICA). Thus, this elaboration that declarations in lieu of affidavits were allowed by court rules demonstrates that the legislature intended to allow for complaints made or accompanied by "declarations in lieu of affidavits."

<u>Id.</u> at 268, 500 P.3d at 453. This court concluded that "HRPP Rule 47(d) is the applicable rule of court pertaining to declarations in lieu of affidavits" and "the underlying complaint should have been subscribed under oath by the complainant or made by declaration in lieu of affidavit in conformity with HRPP Rule 47(d)" to satisfy the requirements of HRS § 805-1. <u>Id.</u>

This court noted that "the ICA acknowledged that the underlying complaint did not comply with HRS § 805-1's requirements" but "held that the district court may issue a summons on a non-compliant complaint," reasoning "that the State did not need to establish probable cause to request a penal summons." <u>Id.</u> However, this court determined that "by focusing

21

on the issue of probable cause, the ICA overlooked the preliminary question of whether a district court may issue a penal summons upon a complaint that does not comply with HRS § 805-1.  It may not."  Id.  This court stated

> The courts must give effect to the State's statutory obligations.  As previously discussed, when the text of a statute is clear, "the court is bound by the plain, clear and unambiguous language of the statute."  [State v. Sylva, 61 Haw. 385, 387-88, 605 P.2d 496, 498 (1980)].  Again, HRS § 805-1 unambiguously requires the State to ensure that complaints are either subscribed under oath by a complainant or accompanied by a declaration in lieu of an affidavit.  Supra at 150 Hawai'i at 267-68, 500 P.3d at 452-53.  Given that the legislature recognized the need to protect "the offender's right to challenge the veracity of the [accuser]," we cannot say that the State's failure to comply with HRS § 805-1's requirements constitutes a mere formal defect for which dismissal is not warranted under HRPP Rule 7(d).  S. Stand. Comm. Rep. No. 1194, in 2007 Senate Journal, at 1557-58.  Thus, the courts must hold the State to its obligations under HRS § 805-1 before granting the State a penal summons.  Sylva, 61 Haw. at 387-88, 605 P.2d at 498.

Id. at 269, 500 P.3d at 454 (footnote omitted) (second brackets in original).  This court concluded that "the ICA erred in holding sub silentio that the State need not comply with its statutory duties.  In turn, the ICA also erred in concluding that 'the Complaint was not defective and the penal summons was properly issued.'"  Id.

This court further concluded that "HRS § 805-1 does not distinguish between complaints for penal summons and complaints for arrest warrants" and the ICA erroneously held "that the State need not comply with its statutory obligations

22

simply because it sought a penal summons." Id. at 270, 500 P.3d at 455 (emphasis added).

Appellees' cases are distinguishable from Thompson, where the State sought a penal summons by complaint. Id. at 264, 500 P.3d at 449. Here, in contrast, the State only used the complaints in Appellees' cases to charge Appellees with the offense of OVUII. In other words, the State did not use the complaints in Appellees' cases to seek a penal summons or an arrest warrant because Appellees were already arrested and had posted bail when the State filed the complaints charging Appellees with OVUII. Thus, the complaints in Appellees' cases are distinguishable from the complaint in Thompson because there is a difference between a complaint used to charge a defendant with a criminal offense and a complaint used to obtain a penal summons or an arrest warrant.

Appellees contend this "court specifically stated that, 'HRS § 805-1 unambiguously requires the State to ensure that complaints are either subscribed under oath by a complainant or accompanied by a declaration in lieu of an affidavit.'" However, when this court stated that "HRS § 805-1 unambiguously requires the State to ensure that complaints are either subscribed under oath by a complainant or accompanied by a declaration in lieu of an affidavit," Thompson, 150 Hawaiʻi at 269, 500 P.3d at 454 (citing Thompson, 150 Hawaiʻi at 267-68, 500

P.3d at 452-53), this court cited to an earlier section of the Thompson opinion, which states that "[t]he requirements of HRS § 805-1 therefore apply to all criminal complaints, <u>regardless of whether the State uses the complaint to seek a penal summons or an arrest warrant</u>."  Id. at 267, 500 P.3d at 452 (emphasis added).  The issue in Thompson specifically involved a complaint that sought a penal summons.  Moreover, this court did not hold that all complaints must satisfy the requirements of HRS § 805-1.  Thus, this court's holding in Thompson was limited to complaints seeking a penal summons or an arrest warrant.

Appellees also maintain that HRS § 805-1 requires "a complaint be either subscribed by the complainant or support[ed] by declaration in lieu of affidavit" in order "to protect the accused's right to challenge the veracity of the complainant."  Appellees contend that:

> The bottom line is a complaint which is "fatally defective" is not fatally defective only because the State uses such a complaint to seek an arrest warrant or penal summons.  Under such reasoning, the State would be given the unwarranted discretion to decide when a complaint would require to be subscribed to by the complainant or supported by declaration.  As the Legislature had decided that the underlying purpose of imposing the requirements of HRS § 805-1 was to protect the accused right to challenge the veracity of the accuser ([Thompson, 150 Hawai'i] at 269, 500 P.3d at 454 (citing S. Stand. Comm. Rep. No 1194, in 2007 Senate Journal at 1557-58)), it would be nonsensical to allow the State to choose the situations when this significant right was protected and when it was not.  Such an interpretation which leads to an absurd result must be rejected.  See e.g. Moranz v. Harbor Mall, LLC, 150 Hawai'i 387, 398, 502 P.3d 488, 499 (2022) (citing Alvarado v. Kiewit Pacific Co., 92 Hawai'i [515], 517, 993 P.2d 549, 551 (2000)[)] (quoting Frank v. Hawaii Planning Mill Found., 88 Hawai'i 140, 144, 963 P.2d 349, 353 (1998) (holding that the

> appellate court is bound to construe statutes to avoid
> absurd results and a statutory interpretation that is
> "'rational, sensible[,] and practicable . . . is preferred
> to one which is unreasonable[,] impracticable . . .
> inconsisten[t], contradict[ory], and illogical[].'")

(First brackets added.).

Appellees mistakenly contend that limiting Thompson to only complaints for a penal summons or an arrest warrant would lead to an absurd result.  As an initial matter, Appellees erroneously argue that this court "concluded that the requirement that a complaint be either subscribed by the complainant or support[ed] by declaration in lieu of affidavit was to protect the accused's right to challenge the veracity of the complainant."  Rather, this court stated:

> When the legislature amended HRS § 805-1 to provide
> prosecutors with the option to make complaints by
> declaration, the Senate Committee on Judiciary and Labor
> explained that "allowing the use of declarations in lieu of
> affidavits for arrest citations and traffic crime
> complaints is consistent with current rules of court, and
> would not harm the offender's right to challenge the
> veracity of the officer."  S. Stand. Comm. Rep. No. 1194,
> in 2007 Senate Journal, at 1557-58 (emphasis added).

Thompson, 150 Hawai'i at 268, 500 P.3d at 453 (emphasis added).

As stated in Thompson, this court did not conclude that the purpose of HRS § 805-1's requirement that a complaint be subscribed by the complainant or supported by declaration in lieu of affidavit was to protect the accused's right to challenge the veracity of the complainant.  Instead, this court noted that "allowing the use of declarations in lieu of affidavits for arrest citations and traffic crime

25

complaints . . . , <u>would not harm</u> the offender's right to challenge the veracity of the officer." <u>Id.</u> (emphasis added). While this court stated that HRS § 805-1's requirements "would not harm" a defendant's right to challenge the veracity of the complainant, that does not mean the purpose of HRS § 805-1 is to protect that same right. Thus, Appellees' arguments regarding their ability to challenge the veracity of the complainant lacks merit.

2. **The plain language of HRS § 805-1 demonstrates that the statute does not apply to the complaints in Appellees' cases.**

The plain language of HRS § 805-1 demonstrates that the statute applies only to complaints seeking a penal summons or an arrest warrant. "It is well-established that 'when [a statute's] language is plain and unmistakable[,] the court is bound by the plain, clear and unambiguous language of the statute.'" <u>Id.</u> at 267, 500 P.3d at 452 (quoting <u>Sylva</u>, 61 Haw. at 387-88, 605 P.2d at 498) (brackets in original). As applied to Appellees' cases, HRS § 805-1 provided:

> <u>Complaint; form of warrant.</u> <u>When a complaint is made to any prosecuting officer of the commission of any offense, the prosecuting officer shall examine the complainant, shall reduce the substance of the complaint to writing, and shall cause the complaint to be subscribed by the complainant under oath, which the prosecuting officer is hereby authorized to administer, or the complaint shall be made by declaration in accordance with the rules of court.</u> If the original complaint results from the issuance of a traffic summons or a citation in lieu of an arrest pursuant to section 803-6, by a police officer, the oath may be administered by any police officer whose name has been submitted to the prosecuting officer and who has been

> designated by the chief of police to administer the oath, or the complaint may be submitted by declaration in accordance with the rules of court. <u>Upon presentation of the written complaint to the judge in whose circuit the offense allegedly has been committed, the judge shall issue a warrant, reciting the complaint and requiring the sheriff, or other officer to whom it is directed, except as provided in section 805-3, to arrest the accused and to bring the accused before the judge to be dealt with according to law</u>; and in the same warrant the judge may require the officer to summon such witnesses as are named in the warrant to appear and give evidence at trial. The warrant may be in the form established by the usage and practice of the issuing court.

(Emphasis added.)

The first sentence of HRS § 805-1 discusses the requirements of a complaint and states:

> When a complaint is made to any prosecuting officer of the commission of any offense, the prosecuting officer shall examine the complainant, shall reduce the substance of the complaint to writing, and shall cause the complaint to be subscribed by the complainant under oath, which the prosecuting officer is hereby authorized to administer, or the complaint shall be made by declaration in accordance with the rules of court.

Although the first sentence of HRS § 805-1 does not state the statute applies only to complaints for a penal summons or an arrest warrant, the third sentence of HRS § 805-1 states:

> Upon presentation of the written complaint to the judge in whose circuit the offense allegedly has been committed, the judge shall issue a warrant, reciting the complaint and requiring the sheriff, or other officer to whom it is directed, except as provided in section 805-3, to arrest the accused and to bring the accused before the judge to be dealt with according to law . . . .

The third sentence of HRS § 805-1 makes clear that the statute applies to complaints for an arrest warrant, and <u>Thompson</u> makes clear that the statute also applies to complaints for a penal summons. However, based on the plain language of HRS § 805-1

27

and Thompson, the requirements of HRS § 805-1 do not apply to complaints used to charge a defendant who has already been arrested. Thus, the plain language of HRS § 805-1 establishes that the complaints in Appellees' cases did not have to satisfy the requirements of HRS § 805-1.

> **3. Case law interpreting past versions of HRS § 805-1 demonstrate that HRS § 805-1 applies only to complaints for a penal summons or an arrest warrant.**

This court's precedent confirms what Thompson and the plain language of HRS § 805-1 demonstrate: HRS § 805-1 applies only to complaints for a penal summons or an arrest warrant. In other words, there is a difference between a complaint for a penal summons or an arrest warrant, and a complaint used to charge a defendant who has already been arrested.

As the State points out, "[i]t appears that the import of HRS § 805-1 has been substantially unchanged since 1892 when it was enacted as Chapter LVII, An Act to Reorganize the Judiciary Department." The State also points out that "[t]he earliest codified iteration of HRS § 805-1 appears to be Chapter 53 Part I § 606 of The Penal Laws of the Hawaiian Islands, 1897." Citing to Sing Kee, 14 Haw. at 586-88, the State maintains there is a difference "between a 'charge' which initiates a criminal trial and a 'complaint' in order 'to enable the magistrate to determine whether or not there is probable

cause to believe that an offense has been committed by the accused so as to justify his apprehension.'"

The State correctly asserts that <u>Sing Kee</u> demonstrates there is a difference between a complaint for a penal summons or an arrest warrant and a complaint used to initiate a criminal trial. In <u>Sing Kee</u>, the defendant was convicted "of the offense of selling spirituous liquor without a license." 14 Haw. at 586. The defendant filed a motion to dismiss the proceedings because (1) the District Magistrate lacked jurisdiction, (2) the complaint upon which defendant was arrested and tried did not sufficiently state any cause, and (3) contrary to law, the complaint did not state a direct and positive offense, but was sworn to on information and belief. <u>Id.</u> at 586-87. The Supreme Court of the Territory of Hawai'i stated:

> These objections to the affidavit, so far as they bear upon the question of the jurisdiction of the District Court, need not be passed upon, for even if the warrant was improperly or illegally issued by reason of its being based upon an affidavit insufficient in form or in substance, the District Court nevertheless had jurisdiction. <u>The evidence shows that when the offense was committed police officers were present, about fifty feet away from the spot, in a store, where the liquor was handed over, and saw such delivery, and that they immediately rushed in and arrested the defendant. Under these circumstances an arrest without a warrant was legal.</u> See section 545 and 547, Penal Laws.
> The contention that the "complaint upon which the defendant *** was tried does not sufficiently state any cause," would seem to be based upon a misconception of the true function of the affidavit or so-called complaint. <u>The sole function of the complaint, as provided for by section 606 of the Penal Laws, is to support the issuance of the warrant or, in other words, to enable the magistrate to determine whether or not there is probable cause to believe that an offense has been committed by the accused so as to justify his apprehension. The complaint referred to in that section is not the charge upon which the defendant is</u>

29

> tried, although it is a statement in substance, and may also be in exact language, of the offense to be set forth in the charge subsequently entered against the defendant in Court. The charge itself is, under the practice prevailing in the District Courts, entered orally by the prosecuting officer upon the defendant's appearance and noted by the magistrate in his record, and it is upon the charge as thus entered that the trial is had. The precise form of the charge entered against this defendant in the District Court of Koloa, is not disclosed by the record before us, nor does it appear that any objection was made on the ground of its insufficiency, although the defendant was present and represented by counsel. We cannot assume, under these circumstances, that the charge as entered did not state an offense.

Id. at 587-88 (emphasis added).

The Sing Kee court thus distinguished between a complaint against a defendant "to enable the magistrate to determine whether or not there is probable cause to believe that an offense has been committed by the accused so as to justify his apprehension" and a complaint where the defendant is charged with a criminal offense. Similar to the complaint referred to "by section 606 of the Penal Laws," the complaint referred to in HRS § 805-1 "is not the charge upon which the defendant is tried." Sing Kee, 14 Haw. at 587-88. Instead, under HRS § 805-1, "[t]he sole function of the complaint . . . , is to support the issuance of the warrant[.]". Id.

In addition, here, it appears that police officers witnessed Appellees committing the offense of OVUII given that Appellees were all arrested for OVUII. Appellees do not contend that they were improperly arrested. Thus, as in Sing Kee, Appellees were properly arrested without a warrant and the State

30

did not use a complaint to request a penal summons or an arrest warrant.

Furthermore, in Territory v. Mix, the Supreme Court of the Territory of Hawaiʻi interpreted "Section 10770, Revised Laws of Hawaii 1945," which "prescribes the manner in which a defendant shall be brought within the jurisdiction of the trial court." 41 Haw. 163, 164 (1955). Because HRS § 805-1 largely retains Section 10770's language,[13] HRS § 805-1 likely follows its predecessor to address how a defendant is "brought within the jurisdiction of the trial court." Id. at 164. The Supreme Court of the Territory of Hawaiʻi noted that Section 10770, Revised Laws of Hawaii 1945 "mandates two prerequisites to the issuance of a valid warrant of arrest[.]" Id. at 165 (emphasis added). Similarly, in Territory v. Williams, 41 Haw. 348, 355 (1956), the Supreme Court of the Territory of Hawaiʻi stated that

---

[13]     Section 10770, Revised Laws of Hawaii 1945 provided:

> "***Complaint; form of warrant. Upon complaint made to any prosecuting officer of the commission of any offense, he shall examine the complainant, shall reduce the substance of the complaint to writing and cause the same to be subscribed by the complainant under oath, which he is hereby authorized to administer. Upon presentation of the written complaint to the magistrate within whose district the offense is alleged to have been committed such magistrate shall issue his warrant, reciting the complaint and requiring the high sheriff, or other officer to whom it is directed (except as provided in the next succeeding section), forthwith to arrest the accused and bring him before the magistrate to be dealt with according to law***."

Mix, 41 Haw. at 164-65.

"section 10770, Revised Laws of Hawaii 1945, <u>provides only for
the issuance of a complaint as the basis of a warrant of
arrest</u>."  (Emphasis added.)  Thus, as in <u>Sing Kee</u>, the
predecessor to HRS § 805-1 as interpreted by the <u>Mix</u> court and
the <u>Williams</u> court was limited to complaints for an arrest
warrant.

**B.   The State properly initiated the criminal proceedings
      against Appellees.**

    **1.   Appellees were properly arrested and released after
          posting bail.**

The State maintains that, pursuant to HRS §§ 803-5 and
803-6, Appellees were all properly arrested without a warrant.

HRS § 803-5 (2014) provides:

> <u>By police officer without warrant.</u>  (a) A police
> officer or other officer of justice, may, without warrant,
> arrest and detain for examination any person when the
> officer has probable cause to believe that such person has
> committed any offense, whether in the officer's presence or
> otherwise.
> (b) For purposes of this section, a police officer
> has probable cause to make an arrest when the facts and
> circumstances within the officer's knowledge and of which
> the officer has reasonably trustworthy information are
> sufficient in themselves to warrant a person of reasonable
> caution in the belief that a crime has been or is being
> committed.

HRS § 803-6(a) (2014) provides:

> <u>Arrest, how made.</u>  (a) At or before the time of
> making an arrest, the person shall declare that the person
> is an officer of justice, if such is the case.  If the
> person has a warrant the person should show it; or if the
> person makes the arrest without warrant in any of the cases
> in which it is authorized by law, the person should give
> the party arrested clearly to understand for what cause the
> person undertakes to make the arrest, and shall require the
> party arrested to submit to be taken to the police station
> or judge.  This done, the arrest is complete.

Here, according to the State, Appellees were all examined and "released after posting bail before 48 hours had passed and before the requirement for a probable cause determination was triggered." Appellees do not contest that they were arrested, examined, and released after posting bail before 48 hours passed. Appellees also do not argue that they were improperly arrested. Thus, it appears that Appellees were properly arrested without a warrant.

Although Appellees were properly arrested pursuant to HRS §§ 803-5 and 803-6(a), the issue remains whether the State properly initiated the criminal proceedings against Appellees by charging Appellees via complaint.

**2. The State properly initiated the criminal proceedings against Appellees under HRPP Rule 7.**

Given that the State did not use the complaints against Appellees to seek a penal summons or an arrest warrant, the State correctly asserts that "the general rule for charges in HRPP Rule 7(d) applies" to Appellees cases. As relevant here, HRPP Rule 7 (2012) provides:

> (a) Use of Indictment, Information, or Complaint. The charge against a defendant is an indictment, a superseding indictment, an information, or a complaint filed in court. . . .
>
> . . . .
>
> (d) Nature and Contents. The charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged. . . . A complaint shall be signed by the prosecutor. . . .

33

Here, the State charged Appellees by complaint with the offense of OVUII pursuant to HRPP Rule 7(d). As the State points out:

> The charging instruments in these cases are signed by the deputy prosecuting attorney and comply in every respect with HRPP Rule 7(d). Nothing in HRPP Rule 7(d) requires that a charging instrument in a misdemeanor case be signed by anyone other than a prosecutor. Nor does HRPP Rule 7(d) require that anything should have been subscribed under oath or made by declaration in lieu of an affidavit by anyone. Nor does any constitutional provision, statute or rule of court require that any misdemeanor charging instrument by itself be subject to a probable cause determination. Consequently, under HRPP Rule 7(d) these charging instruments fulfill the necessary requirements to initiate a prosecution for the offenses named within them and the district court erred in dismissing these charging instruments.

The State correctly notes that the charging instruments in Appellees' cases comply with HRPP Rule 7(d). Moreover, Appellees do not contend the charging instruments failed to comply with HRPP Rule 7(d). Thus, the charging instruments in Appellees' cases were sufficient to initiate a prosecution under HRPP Rule 7(d). In turn, the district court erroneously dismissed without prejudice the charging instruments in Appellees' cases.

## V. CONCLUSION

For the foregoing reasons, we hold that HRS § 805-1 applies only to complaints for a penal summons or an arrest warrant, and the district court improperly dismissed without prejudice the complaints charging Appellees with OVUII.

Accordingly, the district court's January 12, 2022 Notice of Entry of Judgment is reversed.

Brian Vincent
for appellant

Alen M. Kaneshiro
for appellees

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Todd W. Eddins

