**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000278
26-JUL-2023
08:13 AM
Dkt. 46 SO**

NO. CAAP-22-0000278

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
THOMAS R. VITTI, Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
KANEOHE DIVISION
(CASE NO. 1DCW-20-0002158)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Thomas Raymond Vitti (**Vitti**)

appeals from the March 17, 2022 Notice of Entry of Judgment

And/Or Order (**Judgment**) entered by the Honolulu Division of the

District Court of the First Circuit (**District Court**).[1]

On August 12, 2020, Plaintiff-Appellee State of Hawaiʻi

(**State**) filed a complaint (**Complaint**) alleging that on August 11,

2020, Vitti committed the offense of Terroristic Threatening in

_____

[1]     The Honorable Timothy E. Ho presided.

the Second Degree (**Terroristic Threatening Second**) in violation

of Hawaii Revised Statutes (**HRS**) § 707-717(1) (2014).[2]  A bench

---

[2]    HRS § 707-717 provides:

> **§ 707-717  Terroristic threatening in the second degree.**  (1)  A person commits the offense of terroristic threatening in the second degree if the person commits terroristic threatening other than as provided in section 707-716.
>         (2)  Terroristic threatening in the second degree is a misdemeanor.

HRS § 707-716 (2014) provides:

> **§ 707-716  Terroristic threatening in the first degree.**  (1)  A person commits the offense of terroristic threatening in the first degree if the person commits terroristic threatening:
>         (a)  By threatening another person on more than one occasion for the same or a similar purpose;
>         (b)  By threats made in a common scheme against different persons;
>         (c)  Against a public servant arising out of the performance of the public servant's official duties.  For the purposes of this paragraph, "public servant" includes but is not limited to an educational worker.  "Educational worker" has the same meaning as defined in section 707-711;
>         (d)  Against any emergency medical services provider who is engaged in the performance of duty.  For purposes of this paragraph, "emergency medical services provider" means emergency medical services personnel, as defined in section 321-222, and physicians, physician's assistants, nurses, nurse practitioners, certified registered nurse anesthetists, respiratory therapists, laboratory technicians, radiology technicians, and social workers, providing services in the emergency room of a hospital;
>         (e)  With the use of a dangerous instrument or a simulated firearm.  For purposes of this section, "simulated firearm" means any object that:
>         (i)   Substantially resembles a firearm;
>         (ii)  Can reasonably be perceived to be a firearm; or
>         (iii) Is used or brandished as a firearm; or
>         (f)  By threatening a person who:
>         (i)   The defendant has been restrained from, by order of any court, including an ex parte order, contacting, threatening, or physically abusing pursuant to chapter 586; or
>         (ii)  Is being protected by a police officer ordering the defendant to leave the premises of that protected person pursuant
>                                         (continued...)

trial was held on March 17, 2022.  The complaining witness (**CW**) was the only witness.  The District Court found Vitti guilty as charged.

Vitti raises two points of error on appeal, arguing that:  (1) the District Court erred in denying Vitti's motion to dismiss the Complaint;[3] and (2) the District Court abused its discretion in sentencing Vitti to a six-month jail sentence.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Vitti's points of error as follows:

(1)  Vitti contends that the Complaint was fatally defective under <u>State v. Thompson</u>, 150 Hawaiʻi 262, 267, 500 P.3d 447, 452 (2021), because the Complaint was not supported by the complainant's signature, or a declaration in lieu of signature pursuant to HRS § 805-1 (2014).[4]

---

[2](...continued)
> to section 709-906(4), during the
> effective period of that order.
> (2)  Terroristic threatening in the first degree is a
> class C felony.

[3]     The Honorable Summer Kupau-Odo presided.

[4]     HRS § 805-1 has since been amended.  However, at all relevant times, HRS § 805-1 provided:

> **§ 805-1  Complaint; form of warrant.**  When a complaint is made to any prosecuting officer of the commission of any offense, the prosecuting officer shall examine the complainant, shall reduce the substance of the complaint to writing, and shall cause the complaint to be subscribed by the complainant under oath, which the prosecuting officer is hereby authorized to administer, or the complaint shall be made by declaration in accordance with the rules of court.
> (continued...)

3

The Complaint, which is signed by the deputy prosecuting attorney identified therein, states:

> The undersigned Deputy Prosecuting Attorney of the City and County of Honolulu, State of Hawaiʻi charges:
>
> On or about August 11, 2020, in the City and County of Honolulu, State of Hawaiʻi, THOMAS RAYMOND VITTI threatened, by word or conduct, to cause bodily injury to [CW], in reckless disregard of the risk of terrorizing said person thereby committing the offense of Terroristic Threatening in the Second Degree, in violation of Section 707-717(1) of the Hawaiʻi Revised Statutes. The threat must be objectively capable of causing fear of bodily injury in a reasonable person at whom the threat was directed and who was familiar with the circumstances under which the threat was made, and: (1) the threat on its face and in the circumstances in which it was made must be so clear, unconditional, immediate, and specific as to the person threatened, that the threat communicated a seriousness of purpose and an imminent likelihood of being carried out; or (2) THOMAS RAYMOND VITTI possessed the apparent ability to carry out the threat, such that the threat was reasonably likely to cause fear of bodily injury in [CW]. The relative attributes of THOMAS RAYMOND VITTI and [CW] must be taken into consideration in determining whether the threat, under the circumstances, was objectively capable of causing fear of bodily injury in a reasonable person. Relative attributes may include, but are not limited to, size, weight, occupation, training, and status of THOMAS RAYMOND VITTI and [CW].
>
> I, Matthew M. Kajiura, declare under penalty of law that the foregoing is true and correct to the best of my knowledge and belief.

---

[4](...continued)
> If the original complaint results from the issuance of a traffic summons or a citation in lieu of an arrest pursuant to section 803-6, by a police officer, the oath may be administered by any police officer whose name has been submitted to the prosecuting officer and who has been designated by the chief of police to administer the oath, or the complaint may be submitted by declaration in accordance with the rules of court. Upon presentation of the written complaint to the judge in whose circuit the offense allegedly has been committed, the judge shall issue a warrant, reciting the complaint and requiring the sheriff, or other officer to whom it is directed, except as provided in section 805-3, to arrest the accused and to bring the accused before the judge to be dealt with according to law; and in the same warrant the judge may require the officer to summon such witnesses as are named in the warrant to appear and give evidence at the trial. The warrant may be in the form established by the usage and practice of the issuing court.

The Hawaiʻi Supreme Court clarified its holding in Thompson in State v. Mortensen-Young, 152 Hawaiʻi 385, 526 P.3d 362 (2023). In Mortensen-Young, the supreme court held that HRS § 805-1 applies only to criminal complaints used to obtain a penal summons or arrest warrant. Id. at 397, 526 P.3d at 374. In other cases, Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 7 provides the proper framework to analyze the sufficiency of complaints. Id. at 399, 526 P.3d at 376. The supreme court held that each of the appellees was properly charged by a complaint signed by the prosecutor, pursuant to HRPP Rule 7(d), which does not require that a "'charging instrument in a misdemeanor case be signed by anyone other than a prosecutor'" or be "'subscribed under oath or made by declaration in lieu of an affidavit by anyone.'" Id.

Here, as in Mortensen-Young, HRS § 805-1 is inapplicable because the Complaint was not used to obtain a penal summons or arrest warrant. The Complaint set forth a concise and definite statement of the essential facts, was signed by a prosecutor, and referenced the statute that Vitti allegedly violated, as required by HRPP Rule 7(d). The Complaint is a charging instrument that was sufficient to initiate the subject prosecution, and Vitti's contention is without merit. The District Court did not abuse its discretion in denying Vitti's motion to dismiss.

(2) Vitti contends that the District Court abused its discretion in sentencing him to a six-month jail term because the court considered uncharged prior acts as an aggravating factor in determining Vitti's sentence.

As noted by the parties, HRS § 706-606 (2014) sets forth the sentencing factors that the District Court was required to consider:

> **§ 706-606 Factors to be considered in imposing a sentence**. The court, in determining the particular sentence to be imposed, shall consider:
> (1) The nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) The need for the sentence imposed:
> (a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
> (b) To afford adequate deterrence to criminal conduct;
> (c) To protect the public from further crimes of the defendant; and
>
> (d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) The kinds of sentences available; and
> (4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

Vitti also points to State v. Nunes, 72 Haw. 521, 824 P.2d 837 (1992). In Nunes, the supreme court described the circumstances of that case as follows: "In essence, the judge imposed a sentence for uncharged crimes—either intimidating a witness or tampering with a witness. In our minds this raises serious constitutional questions." Id. at 526, 824 P.2d at 840. The court then held, in relevant part:

While a court has broad discretion in imposing a sentence, and can consider the candor, conduct, remorse and background of the defendant as well as the circumstances of the crime and many other factors, a judge cannot punish a defendant for an uncharged crime in the belief that it too deserves punishment.

Id.

Here, the District Court found Vitti guilty of Terroristic Threatening Second based on its finding that the words Vitti spoke to CW on August 11, 2020, constituted terroristic threatening.[5]  The District Court then asked:  "As to

---

[5]   On direct examination, [CW] was asked to describe what happened between him and Vitti on August 11, 2020.  He testified:

> A.  Okay.  I was in the back corner of my backyard, at the back corner of my house, and I was watering my plants which are along like the wall line of my house, and I heard a door slam, and that was like the door on the back of Mr. Vitti's house, and I looked up and he came onto his back porch.  And he looked directly at me and he made death threats to me.
>
> Q.  Okay.
>
> A.  From his back porch.
>
> . . . .
>
> A.  He said, "Die.  Die.  Die.  Die, motherfucker. I'm not going to take your shit anymore.  I'm going to kill you."
>
> Q.  Okay.
>
> A.  "Fuck."
>
> Q.  When -- when you heard that, what was your reaction?
>
> A.  Oh.  I was extremely alarmed.  And I knew that he meant it.  And therefore I quickly walked around my house with my watering jug and went back into my house.  Well, actually I saw my neighbor on the other side and for a second I spoke to him and then I went in my house and I called 911.
>
> . . . .
>
> Q.  Okay.  Let's see.  And what -- did anything else happen between you and the defendant on August 11, 2020?

(continued...)

sentencing?"  The State responded by asking to have CW address the court at sentencing, which the court allowed.  After being directed to speak into a microphone, CW stated:

> You know, I have to admit, sir, I'm not a person that understands the dynamics of everything that goes on here. But I do believe that a person should have to be accountable for their actions, and this being the case, the way the choices and behaviors that Mr. Vitti made towards my family, they're -- they're severe.  They had effects that, you know, I'm not a person who's used to being threatened.  I've gone through life to make friends and to be kind.  And it's a situation where I'm feeling that if a person isn't held accountable for the way that they harm other people that it only encourages them to cause further harm.
>
> And, you know, I -- also, in my heart I don't wish this man to be harmed.  I would hope that he is able to deal with his aggression and to get a hold of his anger and to somehow have a good life.  Somehow.  But even more so, I need him to, you know, stay away from causing harm to people and, in particular, my family and myself.

Vitti does not raise any challenge related to the above.  However, the District Court then questioned CW, after the close of evidence and the determination of guilt, including the following:

> THE COURT:  Okay.  What happened on -- on the 12th?  What happened the day after this incident happened?  With you -- you were about to say something about August 12th on the stand.
>
> [CW]:  August 12th?
>
> THE COURT:  Yes.
>
> [CW]:  Oh, I'm -- I'm sorry, I --
>
> THE COURT:  Did you mean August 2nd?
>
> [CW]:  I -- when we were talking earlier?
>
> THE COURT:  So -- so -- yes, so after you called the police --
>
> [CW]:  After I called the police, sir?

---

A.  No, sir.

> THE COURT: Did you have any other interaction with Mr. Vitti?
>
> [CW]: No. He was taken into custody, sir.
>
> THE COURT: I see. Okay. So -- so when you were talking about him assaulting you, you were not talking about after the -- the --
>
> [CW]: That was --
>
> THE COURT: -- incident?
>
> [CW]: -- on August 2nd, sir.

The prosecutor then directed CW to his seat and said that the State was asking for one year jail as the sentence. Noting that one year was the maximum sentence allowed by law, the District Court asked why the State was asking for one year. The prosecutor responded:

> [Prosecutor]: The State would argue the circumstances of this case and the harm done to the victim in this case are -- show more criminality than in similar cases.
>
> Your honor, [CW] had to move his family because he was so scared and there was a long period of disruptive behavior before that. And -- he didn't want to come to court today. He wanted the case continued to a Monday 'cause of his work schedule, and I told him that means, you know, the defendant will probably get released if we continue it to a date that's convenient for you. So he said, no, he'll -- he'll find a way to come today, on Thursday. So it's a serious matter for him.

The District Court then replied: "But that doesn't mean I should be imposing a year in jail because it's inconvenient to [CW] to appear in court." The court repeatedly asked why the case was deserving of the maximum punishment that the law allows. After rejecting the prosecutor's responses, the court said: "You can say to me whatever you know about this case which -- which -- which you believe deserves a year in jail[,]" followed by, "Tell me about why – why [CW] needed to get a -- a

TRO[.]"  The prosecutor responded that the TRO (temporary restraining order) was based on an August 2, 2020 incident and the court interjected, "I take it it's not the first incident though?"  The prosecutor responded that the other incidents were not so serious, Vitti playing music too loud, driving too fast, staring at [CW's] family in a way that was uncomfortable, and then described an August 2nd incident involving Vitti "violently pushing" at CW's gate, which was not charged in this case, but which was the basis for a TRO.  As the prosecutor continued to describe the August 2nd incident, the District Court said, "I'm going to ask [CW] to come back up . . . ."

The State then asked CW to "tell the judge about the August 2nd, 2020 incident[.]"  CW's detailed response was interspersed with multiple questions from the court about the August 2, 2020 incident, with follow up questions from the court about "did anything happen" between that day and the day of the charged conduct.

No objection was made by defense counsel.  Instead, defense counsel pointed out that Vitti has no record of other convictions, any other pending cases were dismissed, that Vitti was not a "good fit" for that neighborhood, and asked that Vitti be sentenced to a term of probation with credit for the time he already served.  Vitti declined to make a statement.

The court then asked the prosecutor about the cases that were dismissed, whether the State was intending to refile

them (not likely), the nature of the charges (disorderlies, harassment), and when they occurred (late 2020, early 2021). The court asked defense counsel about what Vitti would do if released (work construction, good friend support system).

The District Court then sentenced Vitti as follows:

> THE COURT: Okay. Well, you know what? This -- this is what I'm struggling with, right? I can sentence Mr. Vitti to a jail term today and he can be released with -- I -- if I give him the full year in jail, he will serve the year, the full year with credit for time served, but when he is released there is no supervision. There will be no requirement for him to avail himself of anger management classes, substance abuse monitoring, and the like. He would just be released. And he may be harboring more anger because of the incarceration.
>
> You know, I -- I don't take [CW's] statements lightly. So that -- that's what -- but the court also doesn't want to put someone on probation if he's not going to -- he's just not going to show up for his probation. But -- but I am concerned. I'm concerned that if he serves the full year in jail without any rehabilitation he -- he would just be punished without any hope of -- of perhaps understanding why he -- he did what he did and how -- how to get better. And so this is what I'll do.
>
> I'll sentence -- Mr. Vitti, please stand.
>
> . . . .
>
> . . . I'm going to sentence you to six months in jail, okay, and one year on probation. And as a special condition of -- the mandatory conditions will be you -- you are not to commit another federal or state crime or engage in criminal conduct in any foreign jurisdiction under -- or under military jurisdiction that would constitute a crime under Hawaii law.
>
> And you -- you will report to a probation officer as directed by the court or the probation officer;
>
> that you remain within this jurisdiction -- the jurisdiction of the court unless granted permission to leave by the court or a probation officer;
>
> that you notify your probation officer prior to any change of address or employment;
>
> that you notify a probation officer promptly if arrested or questioned by a law enforcement officer;
>
> that you permit your probation officer to visit you at your home or elsewhere as specified by the court; and that

you make restitution for any losses suffered by the victim, if the court has ordered restitution.

I'm not going to order any restitution.

As far as discretionary conditions, it will be to serve a jail term of six months.

Another discretionary condition is to stay away from [CW] or any member of his family.

Refrain from the use of alcohol or any narcotic drugs or controlled substances without a prescription.

Refrain from possessing a firearm, ammunition, destructive device, or other dangerous weapon.

Undergo a mental health assessment and treatment, including the assessment and treatment for substance abuse dependency and remain in a specified facility if required for that purpose.

And the final one would be to seek and maintain -- I'm sorry, successfully complete the anger management program as directed by your probation officer.

Vitti argues that, while the District Court may have considered the HRS § 706-606 factors, it erred and acted unconstitutionally in considering, *inter alia*, the uncharged, alleged incident on August 2, 2020, recalling CW to testify about the uncharged, alleged incident, in effect acting as an advocate on behalf of the State after the State allegedly failed to deliver a satisfactory justification for imposing a sentence of imprisonment. The State argues, *inter alia*, that Vitti waived these arguments by failing to raise them in the trial court, that a victim has a right to be heard concerning the defendant's disposition before a sentence is imposed, and that it was permissible for the District Court to use prior conduct for the purpose of establishing propensity of dangerousness in the future.

We conclude that the District Court plainly erred and abused its discretion in its sentencing of Vitti when it not only permitted CW to make a statement, but also extensively questioned the prosecutor and CW about prior incidents, further incidents, dismissed charges, and possible uncharged incidents. The District Court went beyond the permissible bounds of evaluating applicable sentencing factors when it conducted further examination of the complaining witness in this manner after the close of evidence. While an explanation of sentencing factors considered is not required in every instance, here, the District Court gave no explanation of the extent of its own post-trial inquiry into uncharged conduct and stated no limitation of its consideration of the further statements elicited by the court from CW and the prosecutor. As stated in Nunes:

> [w]hile a court has broad discretion in imposing a sentence, and can consider the candor, conduct, remorse and background of the defendant as well as the circumstances of the crime and many other factors, a judge cannot punish a defendant for an uncharged crime in the belief that it too deserves punishment.

72 Haw. at 526, 824 P.2d at 840.

We further conclude that the District Court's impermissible reliance on uncharged conduct as a basis for its sentence was unconstitutional and requires that Vitti's sentence be vacated and this case be remanded for resentencing.

For these reasons, the District Court's March 17, 2022 Judgment is affirmed in part and vacated in part. The District Court's conviction of Vitti for Terroristic Threatening Second is

affirmed. Vitti's sentence is vacated, and this case is remanded for resentencing before another judge.

DATED: Honolulu, Hawaiʻi, July 26, 2023.

On the briefs:

Rachel K.X. Murakami,
Deputy Public Defender,
for Defendant-Appellant.

Brian Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge