**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000078
22-DEC-2023
08:14 AM
Dkt. 52 SO**

NO. CAAP-21-0000078

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


STATE OF HAWAI‘I, Plaintiff-Appellee, v.
MICAH S.K. VASCONCELLOS, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
KANE‘OHE DIVISION
(CASE NO. 1DTA-18-03320)


SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Hiraoka and Wadsworth, JJ.)

Defendant-Appellant Micah S.K. Vasconcellos
(**Vasconcellos**) appeals from the Notice of Entry of Judgment
and/or Order and Plea/Judgment, entered on December 22, 2020, in
the District Court of the First Circuit, Kane‘ohe Division
(**District Court**).[1/]  Following a bench trial, Vasconcellos was
convicted of Operating a Vehicle Under the Influence of an
Intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**)
§ 291E-61(a)(1) (Supp. 2018),[2/] and Operating a Vehicle After

---

[1/]     The Honorable William M. Domingo presided over the December 22,
2020 trial and entered the Judgment.  The Honorable Florence Nakakuni presided
over the December 31, 2019 hearing (**suppression hearing**) on Vasconcellos's
December 11, 2018 Motion to Suppress Statements (**Motion to Suppress**).

[2/]     At the time of the alleged offense, HRS § 291E-61 provided, in
relevant part:

> **Operating a vehicle under the influence of an
> intoxicant.** (a) A person commits the offense of operating a
> vehicle under the influence of an intoxicant if the person
> operates or assumes actual physical control of a vehicle:
>
> (1)     While under the influence of alcohol in an
>         amount sufficient to impair the person's normal
>
>                                        (continued...)

License and Privilege Have Been Suspended or Revoked for Operating a Vehicle Under the Influence of an Intoxicant (**OVLPSR-OVUII**), in violation of HRS § 291E-62(a)(1) and (a)(2) (Supp. 2018).[3]

On appeal, Vasconcellos contends that: (1) the "case must be dismissed pursuant to State v. Thompson[, 150 Hawaiʻi 262, 500 P.3d 447 (2021),] where the [C]omplaint did not meet the requirements of HRS § 805-1" and Vasconcellos was arraigned on the "fatally defective Complaint";[4] (2) the District Court conducted a defective colloquy under Tachibana v. State, 79 Hawaiʻi 226, 900 P.2d 1293 (1995); (3) the District Court erred in "failing to suppress Vasconcellos's responses to the [medical rule-out (**MRO**)] questions and all subsequent evidence and statements as the 'fruit of the poisonous tree'"; and (4) the District Court erred "in allowing [Officer Joseph] Amasiu's [(**Officer Amasiu**)] testimony on the [standardized field sobriety test (**SFST**)] where he had no present recollection of the test."

_____

[2] (...continued)
>                    mental faculties or ability to care for the
>                    person and guard against casualty[.]

[3] At the time of the alleged offense, HRS § 291E-62 provided, in relevant part:

> **Operating a vehicle after license and privilege have been suspended or revoked for operating a vehicle under the influence of an intoxicant; penalties.** (a) No person whose license and privilege to operate a vehicle have been revoked, suspended, or otherwise restricted pursuant to this section or to part III or section 291E-61 or 291E-61.5, or to part VII or part XIV of chapter 286 or section 200-81, 291-4, 291-4.4, 291-4.5, or 291-7 as those provisions were in effect on December 31, 2001, shall operate or assume actual physical control of any vehicle:
>
> > (1)    In violation of any restrictions placed on the person's license; [or]
> >
> > (2)    While the person's license or privilege to operate a vehicle remains suspended or revoked[.]

[4] We have reordered Vasconcellos's points of error and have consolidated his first point of error for clarity. Vasconcellos raised his first point of error in a supplemental brief filed on May 19, 2022, pursuant to this court's April 21, 2022 Order. Plaintiff-Appellee State of Hawaiʻi (**State**) filed a supplemental brief on May 20, 2022, pursuant to the same Order. The Order permitted the parties to file supplemental briefs addressing the supreme court's decision in Thompson, which was issued after briefing in this appeal was closed.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Vasconcellos's points of error as follows.

(1) On October 12, 2018, Vasconcellos was charged by Complaint with OVUII and OVLPSR-OVUII. The Complaint was signed by a deputy prosecuting attorney, but was not subscribed under oath by a complainant or accompanied by a declaration in lieu of affidavit. On December 10, 2021, the Hawaiʻi Supreme Court decided Thompson, which held that a penal summons or arrest warrant cannot be issued on the basis of a complaint that is not compliant with HRS § 805-1.[5/] 150 Hawaiʻi at 267-69, 500 P.3d at 452-54; see State v. Mortensen-Young, 152 Hawaiʻi 385, 393-95, 526 P.3d 362, 370-72 (2023) (construing Thompson). Based on Thompson, Vasconcellos argues that the Complaint was "fatally defective" because it did not meet the requirements of HRS § 805-1. Vasconcellos further argues that his arraignment "was effectively a nullity" because it was based on the Complaint. Vasconcellos concedes that he did not raise these issues in the District Court.

We assume without deciding that Vasconcellos did not waive these issues by failing to raise them below. The Hawaiʻi Supreme Court recently held in Mortensen-Young that HRS § 805-1 (2014) applies only to criminal complaints used to obtain a penal summons or arrest warrant. 152 Hawaiʻi at 393-95, 526 P.3d at

---

[5/] At the time of the alleged offense here and in Thompson, HRS § 805-1 (2014) provided, in pertinent part:

> When a complaint is made to any prosecuting officer of the commission of any offense, the prosecuting officer shall examine the complainant, shall reduce the substance of the complaint to writing, and shall cause the complaint to be subscribed by the complainant under oath, which the prosecuting officer is hereby authorized to administer, or the complaint shall be made by declaration in accordance with the rules of court. . . . Upon presentation of the written complaint to the judge in whose circuit the offense allegedly has been committed, the judge shall issue a warrant, reciting the complaint and requiring the sheriff, or other officer to whom it is directed, except as provided in section 805-3, to arrest the accused and to bring the accused before the judge to be dealt with according to law; and in the same warrant the judge may require the officer to summon such witnesses as are named in the warrant to appear and give evidence at trial. The warrant may be in the form established by the usage and practice of the issuing court.

370-72. In other cases, such as the OVUII prosecutions at issue in Mortensen-Young, HRPP Rule 7 provides the proper framework to analyze the sufficiency of complaints. In Mortensen-Young, the supreme court held that the trial court improperly dismissed the complaints against the appellees, reasoning that the charging instruments had complied with HRPP Rule 7(d), and were thus sufficient to initiate prosecutions for OVUII. Id. at 399, 526 P.3d at 376.

Here, as in Mortensen-Young, HRS § 805-1 is inapplicable because the Complaint was not used to obtain a penal summons or arrest warrant; Vasconcellos was already arrested and had posted bail when the State filed the Complaint. See id. at 395, 526 P.3d at 372. The Complaint set forth a plain and concise statement of the essential facts, was signed by the prosecutor, and referenced the statutes that Vasconcellos allegedly violated, as required by HRPP Rule 7(d). Therefore, HRS § 805-1 was inapplicable and the Complaint was sufficient to initiate the subject prosecution. Further, because the Complaint was not "fatally defective," Vasconcellos's arraignment based on the Complaint was not a nullity. Vasconcellos's first point of error is without merit.

(2) Vasconcellos contends that the District Court's Tachibana colloquy was defective in several respects, and as a result, it cannot be concluded that Vasconcellos waived his right to testify knowingly, intelligently, and voluntarily.[6] Because we conclude that the District Court's Tachibana colloquy failed to maintain an even balance between Vasconcellos's right to testify and his right not to testify, we do not reach his remaining contentions about the colloquy.

_____

[6] Vasconcellos argues that the colloquy was defective in the following respects: "(1) the court added 'the right not to make incriminating statements' to the colloquy which implied that Vasconcellos's testimony would necessarily be incriminating and not exculpatory; (2) the court also stated that 'anything you say can be used against you,' again implying that any testimony that Vasconcellos might give would be used against him and not in his favor; (3) the court advised Vasconcellos that if he testified that he would be required to answer all of the prosecutor's questions on cross-examination which is incorrect as he would not be required to answer improper questions; and (4) the court accepted Vasconcellos's response, "I'm good," as a waiver of his right to testify when this statement is ambiguous and did not clearly confirm that he was waiving his right to testify and that it was his decision."

After the State rested, defense counsel indicated his understanding that Vasconcellos did not wish to testify, and the District Court engaged in the following colloquy with Vasconcellos:

> THE COURT: All right. Have you ever testified before in any court proceeding?
>
> [VASCONCELLOS]: No.
>
> THE COURT: Okay. You understand that you have a right to testify and a right not to testify? You understand that?
>
> [VASCONCELLOS]: Yes.
>
> THE COURT: You understand that . . . you have a constitutional right not to make any incriminating statements? You understand that?
>
> [VASCONCELLOS]: Yes.
>
> THE COURT: You understand that you have the constitutional right to remain silent and not testify at this trial?
>
> [VASCONCELLOS]: Yes.
>
> THE COURT: You understand if you do not testify, the Court cannot hold -- hold it against you that you're not testifying? You understand that?
>
> [VASCONCELLOS]: Yes, sir.
>
> THE COURT: You understand that you also have a right to testify, but anything you say can be held against you? You understand that?
>
> [VASCONCELLOS]: Yes.
>
> THE COURT: All right. You understand that if you do testify, you'll be subject to cross-examination, where the prosecutor will be permitted to ask you questions and you will be required to answer those questions? You understand that?
>
> [VASCONCELLOS]: Yes.
>
> THE COURT: Although you should confer with your attorney whether to testify or not, you understand that the final decision is entirely up to you?
>
> [VASCONCELLOS]: Yes, sir.
>
> THE COURT: No one can prevent you from testifying if that is what you wish because that is your right to testify. You understand that?
>
> [VASCONCELLOS]: Yes, sir.
>
> THE COURT: Do you have any questions about what I've explained to you?
>
> [VASCONCELLOS]: No, sir.

> THE COURT: Understanding all that I've explained to you, do you wish to testify today?
>
> [VASCONCELLOS]: I'm good.
>
> THE COURT: All right. Court finds that Mr. Vasconcellos has intelligently, knowingly, and voluntarily waived his right to testify.

The supreme court has repeatedly emphasized that "the [trial] court's advisory to the defendant must maintain an 'even balance' between a defendant's right to testify and the right not to testify." State v. Monteil, 134 Hawaiʻi 361, 370, 341 P.3d 567, 576 (2014) (citing State v. Lewis, 94 Hawaiʻi 292, 295, 12 P.3d 1233, 1236 (2000)). This balance is intended to ensure that the trial court's advisement does not influence the defendant's decision one way or the other. See Tachibana, 79 Hawaiʻi at 236 n.7, 900 P.2d at 1303 n.7.

Here, the District Court failed to maintain an even balance between its advisements, adding elements that potentially cast the right to testify in a negative light and risked influencing Vasconcellos's decision whether or not to testify. For example, the court asked Vasconcellos, "You understand that . . . you have a constitutional right not to make any incriminating statements?" and "You understand that you also have a right to testify, but anything you say can be held against you? (Emphases added.) See State v. Watanabe, No. CAAP-20-0000155, 2021 WL 2624643, at *3 (App. June 25, 2021) (SDO) (concluding that "[w]ithout more, the [trial] court's questions — 'And do you understand that you have the constitutional right not to make any incriminating statements?' and 'Do you understand that if you elect to testify, anything you say can and may be used against you?['] — did not maintain an even balance between Watanabe's right to testify and the right not to testify." (quoting Monteil, 134 Hawaiʻi at 370, 341 P.3d at 576) (brackets and some internal quotation marks omitted)). These questions advised Vasconcellos of his rights in a manner that implied he could or would be incriminating himself by testifying. See id. On this record, we cannot conclude that Vasconcellos's waiver of his right to testify was knowingly, intelligently and voluntarily made.

As Vasconcellos did not exercise his right to testify, we cannot conclude that the District Court's error was harmless beyond a reasonable doubt because it is not knowable whether Vasconcellos's testimony, had he given it, could have established reasonable doubt that he committed the charged offenses. See State v. Celestine, 142 Hawaiʻi 165, 173, 415 P.3d 907, 915 (2018). We therefore vacate Vasconcellos's OVUII and OVLPSR-OVUII convictions.

(3) Prior to trial, Vasconcellos filed the Motion to Suppress, by which he sought an order precluding the State from introducing any statements made by Vasconcellos to Honolulu Police Department (**HPD**) officers and any evidence gained by the HPD after Vasconcellos was placed under arrest. Vasconcellos argued that any such statements and evidence should be suppressed because he was not advised of his Miranda[7] rights after being stopped and before being subjected to "custodial interrogation" in the form of MRO questions by Officer Amasiu. Following the suppression hearing, the District Court denied the Motion to Suppress, ruling in part that Vasconcellos was not in custody when he was asked the MRO questions and participated in the SFST.

On appeal, Vasconcellos argues that the District Court erred in failing to suppress Vasconcellos's responses to the MRO questions and "all subsequent evidence and statements as the 'fruit of the poisonous tree.'" He further argues that without Officer Amasiu's testimony as to Vasconcellos's performance on the SFST, which followed his responses to the MRO questions, there was no substantial evidence to support the OVUII conviction.

The supreme court recently reiterated in State v. Hewitt, 153 Hawaiʻi 33, 526 P.3d 558 (2023):

> The Miranda rule is, at core, a constitutionally prescribed rule of evidence that requires the prosecution to lay a sufficient foundation—i.e., that the requisite warnings were administered and validly waived before the accused gave the statement sought to be adduced at trial—before it may adduce evidence of a defendant's custodial statements that stem from interrogation during their criminal trial.

---

[7]    Miranda v. Arizona, 384 U.S. 436 (1966).

> The prosecution's burden of establishing that the requisite warnings were given, however, is not triggered unless the totality of the circumstances reflect that the statement it seeks to adduce at trial was obtained as a result of "custodial interrogation," which, as the United States Supreme Court defined it in Miranda, consists of "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of their freedom of action in any significant way." In other words, the defendant, objecting to the admissibility of their statement and, thus, seeking to suppress it, must establish that their statement was the result of (1) "interrogation" that occurred while they were (2) "in custody."

Id. at 43, 526 P.3d at 568 (brackets omitted) (quoting State v. Wallace, 105 Hawaiʻi 131, 137, 94 P.3d 1275, 1281 (2004)).

Here, the threshold issue is whether Vasconcellos was "in custody" when he was asked the MRO questions by Officer Amasiu. A person is "in custody" for purposes of article I, section 10 of the Hawaiʻi Constitution when probable cause to arrest has developed. See Hewitt, 153 Hawaiʻi at 36, 526 P.3d at 561; see id. at 43, 526 P.3d at 568 ("[W]hen probable cause to arrest exists upon an initial stop or detention, the Hawaiʻi constitution requires that Miranda rights be given before 'interrogation' occurs." (citing State v. Ketchum, 97 Hawaiʻi 107, 126, 34 P.3d 1006, 1025 (2001)). In addition:

> When a bright-line rule regarding "custody" (such as the existence of probable cause) has yet to be triggered, "[w]hether the defendant was in custody or otherwise deprived of [their] freedom of action for Miranda purposes is to be determined from the totality of the circumstances, objectively appraised." "These [circumstances] would include the place and time of the interrogation, the length of the interrogation, the nature of the questions asked, the conduct of the police, and all other relevant circumstances."

Hewitt, 153 Hawaiʻi at 45, 526 P.3d at 570 (citations omitted) (quoting State v. Patterson, 59 Haw. 357, 361, 581 P.2d 752, 755 (1978)).

Here, the evidence adduced during the suppression hearing included the following: On September 23, 2018, at around 3 a.m., Officer Amasiu initiated a traffic stop after observing a pickup truck driven by Vasconcellos make a wide U-turn and "end[] up climbing up onto the sidewalk cur[b]ing" in completing the turn. After approaching the vehicle and speaking to Vasconcellos, Officer Amasiu observed "a strong odor of . . .

alcohol emitting from his breath[,]" "like a slurred speech[,]" "glassy eyes, blood-shot red, and basically a flushed face." At that point, Officer Amasiu had a suspicion that Vasconcellos was under the influence of alcohol and asked him if he was willing to participate in the SFST. When Officer Amasiu asked Vasconcellos if he would participate in the SFST, Vasconcellos "was not free to leave the scene," and Officer Amasiu would have arrested Vasconcellos if he had refused to participate in the SFST. Vasconcellos agreed to participate in the SFST. He "staggered" when he exited his vehicle. Officer Amasiu then asked Vasconcellos the MRO questions.[8/] Vasconcellos answered "no" to each of the questions. Officer Amasiu then administered the SFST.

On this record, we conclude there was sufficient probable cause that Vasconcellos was operating his vehicle while under the influence of an intoxicant, such that he was in custody prior to the MRO questions. See State v. Ramseyer, No. CAAP-21-0000216, 2023 WL 2728785, at *2-*3 (Haw. App. Mar. 31, 2023) (SDO) (holding officer had probable cause to arrest defendant for OVUII after observing her driving, and after stopping defendant, observing her eyes "appeared to be red, bloodshot and watery, there was a very strong alcoholic-type beverage odor on her breath and her speech sounded a little bit slurred" (brackets omitted)); State v. Ogata, No. CAAP-18-0000619, 2020 WL 3430060, at *1, *3 (Haw. App. June 23, 2020) (SDO) (holding officer had probable cause to arrest defendant for OVUII after defendant was removed from his vehicle and officers observed, *inter alia*, that defendant could not respond to questions or verbal commands, and "was very disoriented; had red, bloodshot, and watery eyes; slurred speech; gave off a strong odor of alcohol; and could not stay on his feet").

We thus turn to whether the MRO questions were "interrogation" requiring Miranda warnings. In State v. Skapinok, 151 Hawaiʻi 170, 510 P.3d 599 (2022), the supreme court

---

[8/] The MRO questions directed at Vasconcellos included "if he was under the care of a doctor, an eye doctor, if he was epileptic or diabetic, whether or not he had contacts, a glass eye[,]" and other questions Officer Amasiu read from the SFST form.

held that all seven MRO questions that the defendant was asked while in custody were likely to elicit an incriminating response, and therefore <u>Miranda</u> warnings were required. <u>Id.</u> at 184-85, 510 P.3d at 613-14. Because such warnings were not given, the defendant's answers had to be suppressed. <u>Id.</u> at 185, 510 P.3d at 614. Here, based on Officer Amasiu's testimony, the MRO questions that Vasconcellos was asked appear to be the same or substantially similar to the questions that Skapinok was asked. <u>See</u> <u>supra</u> note 8. The MRO questions that Vasconcellos was asked while in custody were thus "interrogation" requiring <u>Miranda</u> warnings. Because such warnings were not given, the District Court erred in failing to suppress Vasconcellos's responses to the MRO questions. Evidence of these responses must be excluded in any retrial.

We also conclude that the evidence gathered after the <u>Miranda</u> violation, including questions asked subsequent to the MRO questions as part of the SFST and Vasconcellos's performance on the SFST (to which we will refer collectively as "the SFST"), was not "fruit of the poisonous tree."[9] <u>See</u> <u>Skapinok</u>, 151 Hawaiʻi at 186, 510 P.3d 599, 615. Based on Officer Amasiu's testimony, he had already set out to administer the SFST before asking the MRO questions, and in fact had asked for and received Vasconcellos's consent for the tests. "The officer[] did not exploit the illegality by continuing to gather evidence that [he] had already set out to gather." <u>Id.</u> at 187, 510 P.3d at 616 (quoting <u>State v. Manion</u>, 151 Hawaiʻi 267, 273, 511 P.3d 766, 772 (2022)). "[T]hat the illegally-obtained evidence is relevant to interpreting subsequently-obtained evidence does not mean that discovery of the latter 'exploits' the former." <u>Id.</u> (emphases and original brackets omitted) (quoting <u>Manion</u>, 151 Hawaiʻi at 273, 511 P.3d at 772). Thus, the SFST was not the fruit of the poisonous tree, and the District Court did not err in admitting the SFST into evidence.

---

[9] Other than his performance on the SFST, Vasconcellos does not identify any specific "statements" that he made following the <u>Miranda</u> violation which he claims were fruit of the poisonous tree.

Vasconcellos argues that without Officer Amasiu's testimony as to Vasconcellos's performance on the SFST, *i.e.*, if the SFST testimony had been suppressed, there was no substantial evidence to support the OVUII conviction.  As we have concluded that the District Court did not err in admitting the SFST testimony into evidence, this argument is without merit.

(4) Vasconcellos contends that the District Court erred in denying his oral motion at the suppression hearing to strike Officer Amasiu's testimony on the SFST under State v. Dibenedetto, 80 Hawaiʻi 138, 906 P.2d 624 (App. 1995).  He argues that the officer had no present recollection of Vasconcellos's performance on the SFST and was testifying only to what he had read in his police report.  He further argues that without Officer Amasiu's testimony as to Vasconcellos's performance on the SFST, there was no substantial evidence to support the OVUII conviction.

Hawaiʻi Rules of Evidence Rule 612 permits "a witness [to] use[] a writing to refresh the witness'[s] memory for the purpose of testifying . . . ."

> When used to refresh the witness's present recollection, a writing is solely employed to jog the memory of the testifying witness."  1 J. Strong, McCormick on Evidence § 9, at 29 (4th ed. 1992).  Accordingly, when a writing is used to refresh a witness's recollection, the witness should testify from "a memory thus revived," resulting in testimony from present recollection, not a memory of the writing itself."  Id.

Dibenedetto, 80 Hawaiʻi at 144, 906 P.2d at 630.  "[A]fter reviewing a writing while testifying, testimony of the witness laying a foundation that the witness's memory has actually been refreshed after reviewing the writing is required before the witness's testimony can be admitted under HRE Rule 612."  State v. Wakamoto, 143 Hawaiʻi 443, 452, 431 P.3d 816, 825 (2018).

At the suppression hearing, Officer Amasiu recounted Vasconcellos's performance on the SFST as follows:  As Officer Amasiu administered the horizontal gaze nystagmus test, Vasconcellos showed impairment with his eyes and had a hard time following instructions and keeping his head still.  He kept moving his head.  During the walk-and-turn test, Vasconcellos was not able to walk in a straight line and stepped off line and

grabbed onto a nearby guide wire to keep from falling. Vasconcellos did not follow instructions, took eight steps at times instead of the nine as instructed, raised his arms, and missed heel-to-toe. During the one-leg stand test, Defendant dropped his foot several times, raised his arms more than six inches, and swayed as he tried to maintain his balance. Vasconcellos was able to count as instructed. After the completion of the SFST, Officer Amasiu asked another officer to place Vasconcellos under arrest for OVUII.

On cross-examination, Officer Amasiu testified that he reviewed his report before the hearing. He said he would have remembered the traffic violation whether or not he had put it in his report. The report did help refresh his recollection as to other things that happened. Officer Amasiu was candid about particular details that he did not recall, such as what Vasconcellos was wearing (other than black sneakers) on the night of the incident, and at what point during the instructional stage of the test Vasconcellos could not keep his balance.

The District Court "f[ou]nd that [Officer Amasiu] was credible in his testimony and that he was testifying, as he said, from his present memory. . . . He has a present recollection that was refreshed."

Vasconcellos argues that Officer Amasiu's "claim that he . . . was testifying from his present recollection was simply not credible given his admission that he did not recall significant details of what had occurred." The record reflects, however, that Officer Amasiu recalled many of the details, including the material aspects, of Vasconcellos's performance on the SFST. He recalled, for example, that during the walk-and-turn test, Vasconcellos was not able to walk in a straight line and grabbed a guide wire for balance, and during the one-leg stand test, Vasconcellos dropped his foot several times and swayed. In these circumstances, we will not disturb the District Court's finding that Officer Amasiu was credible and that he was testifying from his present recollection, which was refreshed after he reviewed his report. See State v. Kaleohano, 99 Hawai'i 370, 376, 56 P.3d 138, 144 (2002) (on a motion to

12

suppress, it is for the trial judge to assess the credibility of witnesses).

Accordingly, the District Court did not err in denying Vasconcellos's motion to strike the testimony of Officer Amasiu on the SFST. Vasconcellos's argument that the District Court lacked sufficient evidence to support his OVUII conviction is based on his argument that Officer Amasiu's testimony on the SFST should not have been admitted. As we have concluded that the District Court did not err in admitting the officer's testimony, this argument is without merit.

For the reasons discussed above, we vacate the Notice of Entry of Judgment and/or Order and Plea/Judgment, entered on December 22, 2020, in the District Court of the First Circuit, Kaneʻohe Division. The case is remanded to the District Court for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, December 22, 2023.

On the briefs:

Alen M. Kaneshiro
for Defendant-Appellant.

Loren J. Thomas,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge